Lawrence DONOVAN, Appellant

v.

The STATE of Texas, State.

No. 02–11–00033–CR.

Court of Appeals of Texas, Fort Worth.

March 13, 2014.

Discretionary Review Granted Sept. 17, 2014.

---

**11.** *See* Tex.R.App. P. 43.2(e).

David L. Richards, Fort Worth, for Lawrence Donovan.

Joe Shannon, Jr., Criminal District Attorney, Charles M. Mallin, Chief of the Appellate Section, Edward L. Wilkinson, Kimberly D'Avignon, Assistant Criminal District Attorneys for Tarrant County, for State.

## OPINION

LEE GABRIEL, Justice.

### Introduction

A majority of this court ordered en banc reconsideration of the court's prior opinion. *See* Tex.R.App. P. 49.7. We withdraw our opinion of July 26, 2012, and substitute the following in its place.

### Background Facts and Procedural History

In 2004, a grand jury indicted Appellant for aggravated sexual assault and indecency with a child. In 2006, Appellant pleaded no contest to injury to a child in exchange for five years' deferred-adjudication community supervision. The trial court specifically found Appellant not guilty of aggravated sexual assault and indecency with a child and granted his motion to expunge the records relating to those counts.[1] However, all three offenses arose out of the same underlying facts and alleged the same victim.

The trial court judge was replaced after the next election. In March 2008, his successor extended Appellant's community supervision and modified its terms to require that Appellant submit to an evaluation for sex-offender treatment and successfully complete the prescribed treatment. Appellant was not required to register as a sex offender. There is no record that

---

1. The parties seem to agree that Appellant was not entitled to an expunction but that the expunction order has not been rescinded. *See* Tex.Code Crim. Proc. Ann.art. 55.01(c) (West Supp.2013) (prohibiting expunction for person convicted or subject to prosecution for offense arising from same criminal episode as offense for which expunction sought). The State did not appeal the expunction order. *See, e.g., In re Expunction of Jones,* 311 S.W.3d 502, 504–05 (Tex.App.-El Paso 2009, no pet.) (discussing standard of review in State's appeal from trial court's grant of expunction petition under article 55.01).

Appellant objected to these terms at the time they were imposed.

In August 2008, Appellant first met with Michael Strain, an approved sex-offender-treatment provider, and began group-counseling sessions that September. On November 8, 2008, he was told that he was required to "admit the offense or pass a polygraph" to remain in the group. However, "probation was able to work it out with Mr. Strain for [Appellant's] return to group," and Appellant resumed participating in the treatment program approximately two weeks later. Strain testified that successful completion of the treatment program generally requires that participants meet thirty goals over a three-year period but that some goals may be waived to accommodate individual circumstances. For instance, the goal of admitting responsibility for a sex offense is commonly waived for persons on community supervision for non-sex offenses.[2] Strain testified that the trial court had instructed him not to require Appellant to admit that he had committed a sex offense. On November 17, 2008, the trial court added work-release confinement as a community-supervision condition. Appellant never objected to this condition.

On February 2, 2009, almost a year after the sex-offender conditions had been imposed, Appellant filed a motion to modify the conditions of his community supervision, asserting that the sex-offender-treatment requirements violated due process. There is no record, however, that Appellant presented his motion to the trial court or that the trial court ruled on it.

In his first year of treatment, Appellant completed eight treatment goals. On August 24, 2009, at a conference between the trial court, prosecutor, Appellant's counsel, Appellant's community-supervision officer, and Strain, all agreed that Appellant could meet the program goals without mentioning or admitting guilt for the expunged sex offenses. The trial court concluded that Appellant would not be required to admit responsibility for those offenses, but that he would be required to discuss the underlying facts leading to the expunged sexual offenses and to complete sex-offender treatment.

By February 2010, Appellant had completed eleven treatment goals. On February 3, 2010, Appellant told Strain that he would not discuss the expunged offenses during treatment sessions because it was illegal for him to do so. Strain's recollection of the trial court's instructions was that Appellant was not required to admit responsibility for the original charged offenses but not that it would be illegal to discuss them. He told Appellant that if it was illegal to discuss the sexual nature of the original charges, he was uncertain whether any useful treatment work could be done and, pending some clarification of the matter, he discontinued Appellant's treatment.

Appellant testified that his attorneys met with the trial court on February 8, 2010, and that the trial court indicated that it wanted to hear from the community-supervision department on the issue. Appellant stated he was "in a holding pattern" after this meeting. Appellant's community-supervision supervisor, Mayra Pinedo, testified that she repeatedly stressed to Appellant that while the matter was pending review he still would be held accountable for meeting his treatment goals by the two-year deadline. She further testified that she offered for him to

**2.** Strain estimated that ten to fifteen percent of defendants in sex-offender treatment are   not charged with sex offenses.

choose another approved provider so that he could complete the goals. Likewise, Appellant testified that Pinedo told him he "need[ed] to go to a different provider."[3] Appellant refused Pinedo's offer to attend treatment with another provider and did not attend any further treatment sessions before the two-year treatment deadline.

The State filed its petition to adjudicate on October 20, 2010, alleging that Appellant had violated his community supervision by not attending sex-offender treatment and not completing two-thirds of his treatment by the two-year deadline. Appellant's counsel conceded at the subsequent adjudication hearing that no timely objection had been made to the modified conditions and that Appellant had attempted to fully comply with them. The trial court granted the State's petition, adjudicated Appellant's guilt, revoked his community supervision, and sentenced him to four years' confinement.

## Discussion

In three points, Appellant contends his due-process rights were violated by the imposition of sex-offender conditions after he was convicted of a non-sex offense, relying on *Ex parte Evans*, 338 S.W.3d 545 (Tex.Crim.App.2011). In *Evans*, the court of criminal appeals curtailed the availability of sex-offender treatment for parolees convicted of non-sex offenses. Appellant concedes that *Evans* allows for situations in which a defendant can be required to attend and complete sex-offender treatment as a condition of community supervision or release. He appears to argue, however, that he was denied due process when the trial court modified his communi-

ty supervision to require him to attend and complete sex-offender treatment and that he was only required to submit to these conditions because he had originally been charged with a sex offense. He stresses that the trial court found him not guilty of the originally charged sex offenses that were later expunged.

Most of Appellant's briefing and argument focuses on the trial judge's apparent displeasure with and reluctance to accept the fact that her predecessor granted Appellant an expunction. While the debate on the propriety and effect of the expunction, which all parties agreed Appellant was not entitled to, filled pages in the record and in the parties' briefs, this anomaly should not divert us from analyzing the question in this case. The expunction has no bearing whatsoever on whether Appellant preserved by objection any complaint about terms and conditions that were unarguably part of his community supervision.

■ Further, this curious history has no bearing on the dispositive issue in this case because whatever merit may lie in Appellant's contentions, *Evans* did not alter, nor does Appellant claim that it altered, the rules for preserving error. It is still the law in this state that a defendant may forfeit constitutional complaints by not raising them timely in the trial court. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim.App.2008), *cert. denied*, 555 U.S. 1105, 129 S.Ct. 904, 173 L.Ed.2d 120 (2009); *Alexander v. State*, 137 S.W.3d 127, 130–31 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (holding that a due-pro-

---

**3.** The dissenting opinion argues that the assertion that Appellant's counsel were told Appellant could transfer to another provider is "not supported by the record and cannot, therefore, be considered." Dissenting Op. at 366. But both Pinedo and Appellant testified that Appellant was given the option to change providers. Appellant did not accept Pinedo's option because "it wouldn't matter." Clearly, Appellant was aware that the option to switch providers was available.

cess complaint was forfeited by failure to assert it in the trial court).[4] To preserve error for appellate review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court. Tex. R.App. P. 33.1(a); *Aldrich v. State*, 104 S.W.3d 890, 894–95 (Tex.Crim.App.2003).

■ In *Speth v. State*, the court of criminal appeals held that to complain about a community-supervision condition on appeal, an appellant must have first challenged the condition in the trial court. 6 S.W.3d 530, 534 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1088, 120 S.Ct. 1720, 146 L.Ed.2d 642 (2000). Speth was originally placed on deferred-adjudication community supervision for aggravated assault on . a peace officer and was later charged with indecency with a child. *Id.* at 531. Although the jury acquitted Speth on the indecency charge, the trial court adjudicated his guilt on aggravated assault based upon evidence admitted during the trial for indecency with a child and placed him on community supervision. *Id.* Despite the acquittal for indecency with a child, the trial court ordered Speth to register as a sex offender, submit to polygraph testing, and refrain from contact with minor girls during the term of his community supervision. *Id.* at 531 & n. 1. Speth did not object to these terms in the trial court but raised them on appeal, arguing their invalidity given his acquittal on the charge of indecency with a child. *Id.* at 531. He argued that the sex-offender terms amounted to a punishment that, given his circumstances, was unauthorized by law and that could be challenged for the first time on appeal. *Id.* The court of criminal appeals, though, held that unobjected-to conditions of community supervision are affirmatively accepted and that Speth had forfeited his claims because he failed to assert them in the trial court. *Id.* at 534.

In *Rickels v. State*, the court of criminal appeals recognized an exception to the general rule of error preservation it had relied upon in *Speth* when it held that the rule does not apply to a defendant who does not have an opportunity to object to the community-supervision condition in the trial court at the time the condition is imposed. 108 S.W.3d 900, 902 (Tex.Crim. App.2003). In *Rickels*, the trial court modified a community-supervision condition without a hearing, and Rickels had no opportunity to object to this modification in the trial court. *Id.* Because Rickles never had a chance to object, the court of criminal appeals addressed the merits of his claim, even though he raised the issue for the first time on appeal. *Id.; see also Pearson v. State*, 994 S.W.2d 176, 179 (Tex. Crim.App.1999) (stating when defendant does not have opportunity to object at sentencing hearing, a motion for new trial preserves error).

Here, the *Rickels* exception does not apply because the record shows that Appellant had the opportunity to object to the modified conditions. He and the trial judge both signed the conditions. Almost a year afterward, Appellant took steps to object to the conditions, filing a motion to modify, in which he contended that the conditions violated due process, but the

4. Clearly, the dissent disapproves of the trial court's handling of this matter. And while the majority, too, may not agree with adding sex-offender conditions to community supervision for a non-sex offense absent notice, a hearing, and evidence proving that the conditions are reasonable, principles of judicial restraint, the rules of error preservation, this court's precedents, and those from the court of criminal appeals all compel us to resist the temptation to reach out and substitute our judgment for the trial court's on issues that— no matter how compelling—are not preserved for our review. *See Little v. State,* 376 S.W.3d 217, 220 (Tex.App.-Fort Worth 2012, pet. ref'd).

record does not show that he ever presented his motion to the trial court or had it ruled on. The record does show, however, that Appellant's lawyers had a conference with the trial court after Appellant had complied with the conditions for over a year, and that during that conference the trial court agreed to waive the treatment goal of Appellant's admitting responsibility for a sex offense. Appellant's lawyers again met with the trial court after Appellant had complied with the community-supervision terms for approximately two years, and the trial court believed the community-supervision department should be contacted for further information. Moreover, at the adjudication hearing, Appellant's counsel announced ready and did not argue the issue they now present on appeal. And although counsel for Appellant mentioned in passing at the adjudication hearing that Appellant objected to "being labeled as a sex offender," he conceded that Appellant did not object to the conditions of having to submit to a sex-offender-treatment evaluation and to complete the prescribed treatment.[5] Further, at the conclusion of the adjudication hearing, counsel urged the trial court to maintain Appellant on community supervision and acknowledged that Appellant was bound to comply with the conditions if the trial court did so.

On rehearing, Appellant argues that two recent cases from the court of criminal appeals could provide a path to a result in his favor. The first is *Leonard v. State*, 385 S.W.3d 570 (Tex.Crim.App.2012). Indeed, in many ways, the facts in *Leonard*

align with the facts in this case. Leonard was indicted for aggravated sexual assault, and appearing before the same trial judge that presided over this case, pleaded guilty to injury to a child in exchange for five years' deferred-adjudication community supervision. *Id.* at 572. The trial court ordered him to submit to sex-offender evaluation and treatment as a condition of his community supervision and Leonard enrolled in a treatment program with the same provider as Appellant did in this case. *See id.* at 573.

But that is where the parallels end.

The trial court ordered Leonard to submit to polygraph testing and show no deception during the tests. *Id.* at 572. When two polygraphs indicated deceit, Leonard was discharged from the program. *Id.* at 572–73. The State petitioned the trial court to adjudicate, alleging that Leonard had violated the polygraph condition and had failed to successfully complete sex-offender treatment. *Id.* The court of criminal appeals clearly set out the issue: "If the polygraph results were inadmissible, then the record would not contain a basis for [the treatment provider's] decision to discharge the appellant, and the trial court abused its discretion by adjudicating the appellant guilty." *Id.* at 577. The court of criminal appeals in *Leonard* did not address the issue of whether a defendant must object to conditions of community supervision at the earliest opportunity, and we decline to rely on a case reversing the same trial court on a different issue as a valid reason to disregard the law that applies to this case.

---

**5.** Addressing the trial court at the adjudication hearing, counsel said:

[W]hen you ordered that Mr. Donovan go into sex offender treatment, there was no objection to that. He attempted to do exactly what you asked him to do. It seems that he was doing all right in that until the issue came up about the expunction....

All we're saying is ... tell us ... how you want this finished, and let Mr. Donovan finish these goals so he can complete what you've asked him to do. Even though we're—we really object to the fact that he is being labeled as a sex offender, let's put that aside for a moment and say help us ... and then let him finish the probation.

The second case relied on by Appellant is *Gutierrez v. State*, 380 S.W.3d 167 (Tex. Crim.App.2012). Gutierrez was put on community supervision for possessing cocaine. *Id.* at 170. As a condition, the trial court ordered her to file for "appropriate legal status" and to "leave the country" if she failed to obtain legal status within twelve months of starting community supervision. *Id.* Gutierrez did not object to either condition. *Id.* After the trial court revoked her community supervision for violating the condition that she self-deport, Gutierrez complained for the first time on appeal that the condition violated the Supremacy Clause of the United States Constitution. *Id.* at 171. Although the State conceded that the trial court lacked authority to order self-deportation as a condition of community supervision, it argued that, under *Speth*, Gutierrez had procedurally defaulted her claim because she had not objected to the condition when it was first imposed. *Id.* (citing *Speth*, 6 S.W.3d at 534).

The court of criminal appeals did not retreat from its holding in *Speth* but distinguished its facts (which are on-point with the facts in this case) from those in *Gutierrez*, which involved a defendant having bargained for something that the trial court had no authority to impose. *See id.* at 174–75. The court reasoned:

We are not inclined to read *Speth* so categorically as to hold that a defendant may not complain for the first time on appeal of a condition of probation which violates an absolute prohibition. . . . This is not to say that a defendant will not forfeit many, if not most, appellate complaints—even most constitutional complaints—about particular conditions of community supervision by failing to ob-

ject at trial, or that he will not effectively waive any constitutional or statutory waiver-only right that might be violated by a condition of community supervision he has agreed to follow in his contractual relationship with the trial court. But he cannot agree to submit to a condition of community supervision that the criminal justice system simply finds intolerable and which is therefore, by definition, not even an option available to the parties.

*Id.* at 175–76 (footnote omitted).

As in *Speth*, the conditions that the trial court imposed in this case do not rise to the level of being an "intolerable" invasion of federal prerogative in violation of the Supremacy Clause as was the case in *Gutierrez*. *See id.* at 176. The compelling argument that prevailed in *Gutierrez* does not apply to the facts before us in this case.

Because the record shows that Appellant did not object to the complained-of conditions by pursuing his motion to amend as a prerequisite to filing an application for writ of habeas corpus [6] or by presenting written objections to the trial court at any point between the time the conditions were imposed and the adjudication hearing—despite his being well represented by counsel and having multiple opportunities to do so—we hold that Appellant has forfeited his claims for review. *See, e.g., Stacks v. State*, No. 06–08–00157–CR, 2009 WL 78141, at *1–2 (Tex. App.-Texarkana Jan. 14, 2009, no pet.) (mem. op., not designated for publication) (collecting cases and holding that complaints regarding community—supervision conditions must be raised in timely appeal after conditions imposed).[7] Accordingly, we overrule all of Appellant's points and affirm the trial court's judgment. *See*

---

6. *See* Tex.Code Crim. Proc. Ann.art. 11.072, § 3(b) (West Supp.2013).

7. We disagree with the concurring and dissenting opinion that we must reach the merits

*Rickels,* 108 S.W.3d at 902, *Speth,* 6 S.W.3d at 534; *see also Beatty v. State,* No. 01–08–00335–CR, 2010 WL 2133870, at *11 (Tex.App.-Houston [1st Dist.] May 27, 2010, pet. ref'd) (mem. op., not designated for publication); *Harrison v. State,* No. 05–08–01362–CR, 2009 WL 3631820, at *3 (Tex.App.-Dallas Nov. 4, 2009, pet. ref'd) (not designated for publication).

Finally, we address the dissenting opinion's conclusion that a new trial is warranted because the trial court abused its discretion in more than one instance. Dissenting Op. at 366. Appellant's only argument is that his due-process rights were violated when the trial court imposed sex-offender community-supervision conditions for a non-sex offense. Many of the dissenting opinion's bases for an abuse-of-discretion finding were not raised by Appellant on appeal. As such, we may not "reach out and reverse the trial court on an issue that was not raised." *State v. Bailey,* 201 S.W.3d 739, 744 (Tex.Crim. App.2006).

## Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.

---

of Appellant's argument that "the trial court abused its discretion by revoking his community supervision for failure to attend and complete a sex-offender treatment program that required him to discuss and admit to sex offenses of which he had been found not guilty and that had been expunged." Concurring & Dissenting Op. 370. Appellant did not argue in his brief that the trial court abused its discretion in revoking his community supervision; rather, Appellant argued that the terms and conditions violated his rights to due process. Indeed, Appellant's argument focuses entirely on the due-process implications of the imposition of sex-offender conditions on a non-sex offense: "The issue is, when should Sex Offender Treatment be required for non-sex offenders? *Evans* helps answer that question." The concurring and

DAUPHINOT, J., filed a dissenting opinion.

WALKER, J., filed a concurring and dissenting opinion in which GARDNER, J., joins.

LEE ANN DAUPHINOT, Justice, dissenting.

Respectfully, I cannot agree with the majority's conclusion that "despite his being well represented by counsel and having multiple opportunities to do so[,] ... Appellant has forfeited his claims for review."[1] The majority does not explain how Appellant could object when his lawyer did not. Although our state's constitution guarantees that "[i]n all criminal prosecutions the accused ... shall have the right of being heard by himself or counsel, or both ...,"[2] the courts of this state have repeatedly held that a defendant has no right to his voice's being heard if he is represented by counsel.[3] Either Appellant was represented by counsel when the conditions of community supervision were amended, in which case he had no recognized right, aside from the constitutional right which has been abrogated by the

---

dissenting opinion agrees that "Appellant forfeited any challenge to the trial court's imposition of the sex-offender-treatment condition to his community supervision." Concurring & Dissenting Op. 366. Because that is the only claim Appellant raised and substantively argued in his brief, our inquiry must end. *See* Tex.R.App. P. 38.1(i); *Rhoades v. State,* 934 S.W.2d 113, 119 (Tex.Crim.App.1996) ("It is incumbent upon counsel to cite specific legal authority and to provide legal argument based upon that authority.").

1. Majority Op. at 357.

2. Tex. Const. art. I, § 10.

3. *See, e.g., Ex parte Medina,* 361 S.W.3d 633, 637 (Tex.Crim.App.2011).

courts, to be heard, or he was denied his right to be represented by counsel at this significant stage in his prosecution.

Nor does the majority explain how Appellant could know that Michael Strain, who is neither a judge nor a community supervision officer, would have the power to create conditions of community supervision that were never ordered by the trial court except by general delegation. Appellant argues that the trial court abused its discretion by revoking his community supervision. I would hold that Appellant is correct.

Appellant was charged by indictment with one count of aggravated sexual assault of a child under seventeen years of age and one count of indecency with a child by contact. The indictment was amended by interlineation to add a third count of bodily injury to a child. Appellant entered his plea of nolo contendere to count three of the indictment pursuant to a plea agreement, and the trial court explicitly acquitted Appellant of the two sexual offenses. The trial court placed Appellant on deferred adjudication community supervision for five years. The trial court also entered an order expunging the records pertaining to the two sexual offenses. There is no record of any opposition by the State to the expunction order. The expunction order itself, however, was inexplicably destroyed.

Subsequently, the trial judge was defeated for reelection, and the new trial judge amended the conditions of Appellant's community supervision to include a requirement that Appellant serve time in jail as a condition of community supervision and that he complete sex offender treatment. The record reflects no grounds for the amendment that had not been before the prior trial judge. Nor does the record reflect whether the amendment was ordered in court or in the community supervision office, whether Appellant was informed that he could object to the amendment or seek advice of counsel, or whether he was represented by counsel when the new trial judge amended the conditions of community supervision.

A timeline is necessary to fully understand the issues of forfeiture and preservation:

August 23, 2006 Appellant was acquitted of sexual offenses, convicted of injury to a child, placed on deferred adjudication community supervision for five years, and served with conditions of community supervision. He was not placed on the sex offender caseload. At some point, by agreement with the district attorney's office, an expunction order was entered regarding the sex offenses.

August 25, 2006 The trial court modified conditions of community supervision from "Do not use, possess, or consume any alcoholic beverage" to "No excessive consumption of any alcoholic beverage."

March 24, 2008 The new trial judge extended community supervision for one year and modified conditions of community supervision to "Do not use, possess or consume any alcoholic beverage. Do not refuse a breath, blood, urine or field sobriety test as requested by a peace officer or supervision officer."

March 24, 2008 The new trial judge amended community supervision conditions to place Appellant on the sex offender caseload and to require him to comply with all terms and conditions of the sex offender caseload except registration as a sex offender.

November 17, 2008 The new trial judge amended conditions of community supervision to require "Confinement TCJ as COP 16 days begins Nov. 21,

2008 Fridays by 9 p.m. and out Mondays by 5 am."

December 1, 2008 The new trial judge amended conditions of community supervision to change the dates of work-release, which she had imposed on November 17, 2008.

February 2, 2009 Appellant's attorney filed "DEFENDANT'S MOTION FOR MODIFICATION OF CONDITIONS OF PROBATION." Appellant's motion states that "the only reason his conditions of probation were amended to require successful completion of the sex offender treatment program was because of Judge Westfall's concern over the Community Supervision Community Development's report to her that [Appellant] had originally been charged with sex offenses—the same offenses for which he had been found not guilty, and for which the Tarrant County District Clerk's Office records were expunged." This statement was never controverted by the State.

August 24, 2009 En camera meeting with lawyers occurred.

October 20, 2010 The State filed its "FIRST PETITION TO PROCEED TO ADJUDICATION." The trial court issued an alias capias for the arrest of Appellant and ordered him held without bond.

October 26, 2010 Appellant's attorney entered a notice of representation. The trial court set bond and imposed conditions.

November 3, 2010 The warrant for Appellant's arrest was executed.

January 7, 2011 The hearing on the State's motion to proceed to adjudication began.

January 18, 2011 The trial court granted the State's motion, adjudicated Appellant's guilt, and imposed a four-year sentence.

Appellant participated in the sex offender treatment program until he was required to discuss the facts of the two offenses of which he had been acquitted. Michael Strain had been given a copy of the offense report containing descriptions of the expunged offenses as well as descriptions of the offense of which Appellant had been convicted. When Strain told Appellant that he would have to discuss the facts of the allegations upon which the expunged offenses were based, Appellant told Strain that it was illegal for him to comply with Strain's requirement. The majority does not address this issue, holding, instead, that Appellant did not object. Although his lawyer did not object until he had opportunity, Appellant clearly objected when he told Strain that he could not comply with Strain's directive. Appellant was not in court, and there is no showing that he was aware of the proper procedure for complaining about a condition of community supervision or that he knew the proper vehicle for lodging a legally valid objection. But Appellant was correct when he told Strain that it was illegal for him to discuss expunged cases.

Article 55.03 of the Texas Code of Criminal Procedure provides,

When the order of expunction is final:

(1) the release, maintenance, dissemination, or use of the expunged records and files for any purpose is prohibited;

(2) except as provided in Subdivision (3) of this article, the person arrested may deny the occurrence of the arrest and the existence of the expunction order; and

(3) the person arrested or any other person, when questioned under oath in a criminal proceeding about an arrest for which the records have been expunged,

may state only that the matter in question has been expunged.[4]

As the majority acknowledges,

> Strain's recollection of the trial court's instructions was that Appellant was not required to admit responsibility for the original charged offenses but not that it would be illegal to discuss them. He told Appellant that if it was illegal to discuss the sexual nature of the original charges, he was uncertain whether any useful treatment work could be done, and pending some clarification of the matter, he discontinued Appellant's treatment.[5]

That is, Appellant did not abandon Strain's program. Strain abandoned him because Appellant understood article 55.03 to mean that dissemination of the facts and allegations contained in the expunged records was prohibited. The trial court did not explain to Appellant how the statute did not apply to him. Other requirements of the sex offender caseload included detailed discussions of Appellant's sexual history, polygraph tests regarding sexual activity, and other admissions regarding "victims."

Like the applicant in *Ex parte Evans*, who was successful on parole for eighteen months before the Texas Department of Criminal Justice unlawfully added sex offender conditions to his conditions of parole,[6] Appellant was doing well on community supervision until the trial court amended his conditions to place him on the sex offender caseload. The new trial judge clearly stated on the record that she did not agree that the expunction should have been granted by the prior trial judge. Her statements included, "So he got an illegal expunction." She also referred to it as a "baseless expunction." She maintained her position, despite the facts that, as pointed out to her, the district attorney's office had agreed to the expunction, and it had not been appealed.

When Appellant was placed on the sex offender caseload, he was apparently in compliance with the conditions of his community supervision. He had a longstanding ministry with the Roman Catholic Church, was a decorated Air Force veteran who had served during the Vietnam War era, and was employed as a nuclear physicist with the United States Nuclear Regulatory Commission. He had earned two masters degrees and had received a bachelor of science and physics degree from Duke University. As was the case for the applicant in *Ex parte Evans*,[7] Appellant's life quickly went downhill after being placed on the sex-offender caseload.

Due process requires a rational relationship between the offense and the obligations of community supervision. If restitution is ordered, a defendant may be ordered to pay restitution only to the complainants in the cases of which he was actually convicted.[8] There must be not only a rational relationship between the offense and the conditions of community supervision but also recognition of the constitutional rights of the probationer. A probationer cannot be ordered to do an act that violates his constitutional rights as balanced with the goals of community supervision.[9]

---

4. Tex.Code Crim. Proc. Ann.art. 55.03 (West 2006).

5. Majority op. at 353.

6. 338 S.W.3d 545, 546, 553, 556 (Tex.Crim. App.2011).

7. *Id.* at 548.

8. *Martin v. State*, 874 S.W.2d 674, 677 (Tex. Crim.App.1994).

The record does not reflect any action by Appellant that justifies the trial court's transferring him to the sex offender caseload. From the record, the transfer appears to have been ordered because the new trial judge did not agree with the ruling of the former trial judge in acquitting Appellant of the two sex offenses and granting the agreed-upon expunction.

The State argues, and the majority holds, that Appellant should have objected to the amended conditions of community supervision. But the order provides no notice to Appellant that he would be required to discuss sex offenses of which he had been acquitted as well as possible offenses with which he had never been charged. When Appellant learned that he was expected to admit to those offenses, he objected to Mike Strain. The trial judge did intervene, then, to countermand Strain's requirement that Appellant actually admit to the offenses of which he had been acquitted.

The record does not reflect that Appellant was represented by counsel when the trial court amended his conditions of community supervision or even that the amendment occurred in open court. Nor is there any indication that Appellant was aware either of his ability to object or of what the amendments to his conditions of community supervision entailed. As the Supreme Court of the United States explained in regard to statements made in response to custodial interrogation,

> The abdication of the constitutional privilege—the choice on his part to speak to the police—was not made knowingly or competently because of the failure to apprise him of his rights; the compelling atmosphere of the in-custody interrogation, and not an independent decision on his part, caused the defendant to speak.
>
> . . . .
>
> At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. For those unaware of the privilege, the warning is needed simply to make them aware of it—the threshold requirement for an intelligent decision as to its exercise. More important, such a warning is an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere. It is not just the subnormal or woefully ignorant who succumb to an interrogator's imprecations, whether implied or expressly stated, that the interrogation will continue until a confession is obtained or that silence in the face of accusation is itself damning and will bode ill when presented to a jury. Further, the warning will show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it.
>
> The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that

9. *Ex parte Dangelo,* 339 S.W.3d 143, 148–49 (Tex.App.-Fort Worth 2010) (*Dangelo I*), aff'd, 376 S.W.3d 776 (Tex.Crim.App.2012) (*Dangelo II*).

the individual knows he is free to exercise the privilege at that point in time.

The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest.[10]

A defendant in a criminal case does not lose his right against self-incrimination under either the Constitution of the United States or the Constitution of the State of Texas when he is placed on community supervision.[11] Yet the trial court granted the State's motion to proceed to adjudication because Appellant refused to discuss underlying facts of the cases of which he had been acquitted and which had been expunged and refused to discuss sexual activity that might reveal acts for which he could be criminally prosecuted. Essentially, the trial court revoked Appellant's community supervision and proceeded to adjudication of his guilt because he invoked his constitutional right not to provide evidence against himself, resulting in Strain's expelling Appellant from his sex offender program.

On appeal, the State contends that Appellant's treatment program could have been "tailored" to avoid doing violence to the proscriptions regarding an expunged offense. Appellant's counsel has stated repeatedly, both in oral argument and in written argument, that they were

constantly in [the trial court's] chambers to address the recurring issue as to how Appellant was to deal with a probation department that, in effect, required him to admit a nonexistent sex crime—the very "offense" he had (with the State's consent) been found not guilty of and the subject of an expunction order.

There is no showing in the record that defense counsel were ever made aware by the Court or Probation that Appellant could switch to a provider other than Michael Strain and Associates. That is the "surprise" referred to by defense counsel in the trial court and on appeal. Counsel were never advised that option was available. Had they known, they would have switched providers.[12]

Appellant has suggested that a recent Texas Court of Criminal Appeals opinion is instructive in this case and that we should follow its reasoning. In *Leonard v. State*, the Court of Criminal Appeals reminds us that

[i]n a revocation proceeding, the trial court has discretion to revoke community supervision when a preponderance of the evidence supports one of the State's allegations that the defendant violated a condition of his community supervision. Though defendants are not entitled to community supervision as a matter of right, once a defendant is assessed community supervision in lieu of other punishment, this conditional liberty "should not be arbitrarily withdrawn by the court ...." On appeal from a trial court's decision to revoke, therefore, ap-

---

**10.** *Miranda v. Arizona*, 384 U.S. 436, 465–69, 86 S.Ct. 1602, 1623–25, 16 L.Ed.2d 694 (1966) (citations omitted).

**11.** *Dangelo II*, 376 S.W.3d at 781.

**12.** Appellant's Post–Submission Brief at 4.

pellate courts review the record only to ensure that the trial court did not abuse its discretion.

Upon close examination, however, it is not obvious how an abuse-of-discretion standard applies in this case. The trial court ordered the appellant to "[a]ttend and participate fully in and successfully complete" a program. The evidence at the adjudication hearing showed that the appellant did "[a]ttend" and "participate fully" in the program, both of which were within his power to do. The appellant did not have full control over his ability to "successfully complete" the program, however; he was discharged because the therapist came to believe that he was being dishonest. Thus it was the therapist's discretion that caused the appellant to be in violation of a term of his community supervision.

As the trial court suggested, under an ordinary abuse-of-discretion review, our analysis would already be over: Discharge caused the appellant to be in violation, and there was evidence that the appellant was discharged. Such an analysis on our part, however, would be inadequate.

Revocation involves the loss of liberty and therefore implicates due process. "The central issue to be determined in reviewing a trial court's exercise of discretion in a [community supervision] revocation case is whether the [defendant] was afforded due process of law." It would surely offend due process if a defendant were discharged from his therapy program for a wholly inappropriate reason—such as illegal discrimination or mere caprice—and the bare fact of that discharge were used as a basis to revoke the defendant's community supervision. Yet, by an ordinary

abuse-of-discretion review, such a revocation would be sustained.

What has happened here is that the trial court, through a condition of the appellant's community supervision, made the appellant's compliance with the terms of his community supervision subject to the discretion of a third party. In such a case, to determine whether the trial court abused its discretion we must also examine the third party's use of its discretion to ensure that it was used on a basis that was rational and connected to the purposes of community supervision.[13]

The majority, however, declines Appellant's invitation, stating, "we decline to rely on a case reversing the same trial court on a different issue as a valid reason to disregard the law that applies to this case."[14] With all appropriate respect to the majority, the *Leonard* court is dealing with the same trial judge and the same kind of condition of community supervision and the same provider. Leonard was told by Strain to pass a polygraph test. In the case now before this court, Appellant was told to discuss his sexual abuse of a child in a case that had been expunged because the trial court had found Appellant not guilty of the accusations. The State argued at the hearing on adjudication and again argues on appeal that Appellant could have discussed other instances of his sexually abusing children, although there is no evidence that Appellant ever sexually abused any child. A mere allegation, whether by the State or by a treatment provider, is not evidence.

Leonard made no objection to the polygraph requirement. The Texas Court of Criminal Appeals, nevertheless, held that

---

**13.** *Leonard v. State,* 385 S.W.3d 570, 576–77 (Tex.Crim.App.2012) (citations omitted).

**14.** Majority Op. at 356–57.

because the trial court ordered Leonard to both do things within his power to do, such as attend the program and participate fully, but also things not within his power to do, such as pass a polygraph test, that the appellate court should have determined whether Strain abused his discretion in discharging Leonard from therapy and therefore causing Leonard "to be in violation of a term of his community supervision." [15] The *Leonard* court concluded that because Strain's opinion was founded in inadmissible evidence, the only evidence supporting revocation was inadmissible, rendering the trial court's action in revoking Leonard's community supervision an abuse of discretion.[16]

Although I cannot agree with the *Leonard* court that a trial court can properly delegate its authority to a third party to determine whether community supervision should be revoked,[17] I do not agree with the majority here that we can ignore the mandates of *Leonard.* In the case now before this court, there is no showing that Appellant had the ability to comply with Strain's order to discuss sexually abusing children. The former trial judge had found Appellant not guilty in response to the only accusations against him, and those cases had been expunged.

The majority also suggests that I have attempted to "reach out and reverse the trial court on an issue that was not raised" because I would hold that the trial court abused its discretion by ordering, without hearing or benefit of counsel, jail confinement as a condition of community supervision. A trial court may abuse its discretion by ordering a condition of community supervision that deprives a defendant of his conditional liberty without due process of law.[18] If that action of the trial court was not the basis of revocation and not the basis of the appeal, reversal may not necessarily be required. But here, it was merely one step down the slippery slope of an improper revocation. The majority appears to believe that because Appellant attempted to comply with improperly imposed conditions of community supervision, he could never complain of any action of the trial court. On appeal the State suggests that Appellant and his counsel were aware of all circumstances. But Appellant's counsel on appeal points out that they were never told that Appellant could choose another treatment provider. The fact that Appellant was tossed in jail during his community supervision with no motion, no hearing, and no lawyer is an inseparable part of the mosaic of this revocation that is now being appealed. The trial court abused its discretion at this point on the path to revocation, and we should say so. But I agree that this additional abuse of discretion by the trial court would not be grounds to reverse under the facts and posture of this case as a whole.

I cannot agree, however, with the majority's interpretation of *Gutierrez v. State.*[19] The *Gutierrez* court held that although a criminal defendant may waive his right to complain of improper conditions of community supervision, he "cannot agree to submit to a condition of community supervision that the criminal justice system simply finds intolerable and which is

---

15. *Leonard,* 385 S.W.3d at 577–78.

16. *Id.* at 583.

17. *See id.* at 577.

18. *Id.* at 576 ("Though defendants are not entitled to community supervision as a matter of right, once a defendant is assessed community supervision in lieu of other punishment, this conditional liberty should not be arbitrarily withdrawn by the court ....") (internal quotation marks omitted).

19. 380 S.W.3d 167 (Tex.Crim.App.2012).

therefore, by definition, not even an option available to the parties."[20] When the majority in the case before us states, "[T]he conditions that the trial court imposed in this case do not rise to the level of being an 'intolerable' invasion of federal prerogative in violation of the Supremacy Clause ...,"[21] the majority mistakenly narrows the *Gutierrez* holding, improperly limiting its reach to questions of federal preemption or conflicts with federal mandate. I would hold that a probationer "cannot agree to submit to a condition of community supervision that the criminal justice system simply finds intolerable and which is therefore, by definition, not even an option available to the parties."[22]

I would further hold that the trial court abused its discretion (1) by placing Appellant on the sex offender caseload, (2) by ordering, without hearing or benefit of counsel, jail confinement as a condition of community supervision, (3) by delegating to Mike Strain the authority to set the conditions of community supervision, (4) by requiring Appellant to discuss the details of offenses of which he had been acquitted as well as the related records which had been expunged, and (5) by requiring Appellant to discuss uncharged sexual activity which could have been illegal and which was never shown to exist. I would also hold that the trial court abused its discretion by revoking Appellant's community supervision because of his attempt to comply with article 55.03. That is, I would hold that the trial court abused its discretion by revoking Appellant's community supervision and proceeding to adjudication because the trial court found that Appellant, who had not been convicted of a sex

offense, had failed to comply with the sex offender caseload conditions promulgated by a person who was neither a judge nor a community supervision officer and based on records which had been ordered expunged and Appellant's refusal to reveal facts that could lead to his criminal prosecution. I would additionally hold that claims that Appellant's counsel were told that Appellant could transfer to a provider other than Strain are not supported by the record and cannot, therefore, be considered.

Because the majority does not so hold, I must respectfully dissent.

SUE WALKER, Justice, concurring and dissenting.

I join in the majority opinion's holding that Appellant forfeited any challenge to the trial court's imposition of the sex-offender-treatment condition to his community supervision. Appellant did not object when the trial court imposed this supplemental condition, Appellant signed the Supplement/Amendment to Conditions of Community Supervision, and he began sex-offender treatment in compliance with that condition; in fact, Appellant's counsel stated at the adjudication hearing that Appellant did not object to this condition when it was imposed and instead "attempted to do exactly what [the court] asked him to do." By not timely challenging the sex-offender-treatment condition and by instead affirmatively accepting the condition, he forfeited his *Ex parte Evans* complaint that he was denied due process by not being afforded a hearing prior to imposition of this condition.[1] *See Ex parte Evans*, 338

---

**20.** *Id.* at 175–76.

**21.** Majority Op. at 357.

**22.** *Gutierrez,* 380 S.W.3d at 175–76.

**1.** Appellant also did not raise this complaint in the trial court. *See Lovill v. State,* 319 S.W.3d 687, 691–92 (Tex.Crim.App.2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial.").

S.W.3d 545, 556 (Tex.Crim.App.2011) (holding habeas applicant entitled to relief from parole revocation based solely on violation of sex-offender conditions that were imposed without due process "and against which [Evans] ... protested at every step of the way"); *Speth v. State*, 6 S.W.3d 530, 534–35 (Tex.Crim.App.1999), *cert. denied*, 529 U.S. 1088, 120 S.Ct. 1720, 146 L.Ed.2d 642 (2000); *Little v. State*, 376 S.W.3d 217, 221 (Tex.App.-Fort Worth 2012, pet. ref'd); *see also* Tex.R.App. P. 33.1(a); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex.Crim.App.2009) ("[N]umerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved.").

But Appellant complains on appeal not only of the imposition of the sex-offender-treatment condition without a hearing but also of the revocation of his community supervision based on his failure to attend and complete a sex-offender treatment program that required him to discuss and admit to sex offenses of which he had been found not guilty and that were the subject of an expunction order.[2] When the trial court imposed the sex-offender-treatment condition, Appellant could not have objected that treatment would require him to discuss and admit to the acquitted and expunged sex offenses—he did not know at that time that he would be asked to do so in order to complete the treatment.[3] This

**2.** This issue is fairly subsumed within Appellant's points on appeal. *See* Tex.R.App. P. 38.1(f) (stating that every point *"will be treated* as covering every subsidiary question that is fairly included") (emphasis added). Appellant complains in his first point of the trial court's revocation of his community supervision "for failure to complete [a] sex offender treatment program as a condition of his probation for the non-sex offense of injury to a child." Under that first point, he lists the following subpoints:

  A. The trial judge misunderstood and therefore gave no [e]ffect to an earlier expunction order entered in the case.

  B. The trial court misunderstood and therefore gave no [e]ffect to the earlier verdict of not guilty to the charged ... sex offense.

  C. The trial court's orders and the revocation hearing predated the court of criminal appeals' landmark decision in *Ex parte Evans* ....

Appellant's second point complains of the trial court's revocation of his community supervision "for failure to attend a sex offender treatment program from February 3, 2010, through the date of the revocation hearing" and lists as subpoints:

  A. Appellant was discharged by one sex offender treatment provider after the provider learned of the [e]ffect of an earlier expunction order entered in the case.

  B. It was improper for the probation department to require appellant to continue

sex offender treatment by choosing a different treatment provider because the expunction order would have prevented all providers from obtaining and then disseminating information involving the earlier charged sex offense.

Appellant's third point complains of the trial court's revocation of his community supervision for failure "to complete two-thirds of a sex offender treatment program on or before August 18, 2010." Appellant specifically states in his brief that he was "confronted by a Catch–22. One of the requirements to complete the program entailed Appellant admitting that he was a sex offender." He further argues that he was found not guilty of the sex offenses and that the records of those offenses had been expunged but that the trial court "nevertheless required Sex Offender Treatment and [revoked] [Appellant's] probation for various failures related to that requirement." According to his brief, "One need only do a cursory review of the three exhibits tendered by the defense in this case to see the private matters [Appellant] was forced to reveal and the restrictions on his life in his attempt to comply with the requirements of Sex Offender Treatment."

**3.** Thus, this issue is unlike that in *Speth*, where the appellant's complaint about conditions of community supervision was known at the time the condition was imposed but appellant nevertheless did not object. *See* 6 S.W.3d at 534 (holding complaints about con-

requirement became evident only after Appellant entered and participated in the program, and when it became evident during treatment that Appellant would have to admit to the offenses as part of treatment, he "protested at every step of the way." *See Evans*, 338 S.W.3d at 556; *Speth*, 6 S.W.3d at 534 n. 9 (stating, in holding that a defendant must complain at trial to conditions he finds objectionable, that "[t]his assumes the probationer knew what the conditions were in time to object at trial").

The record reveals that when Appellant began sex-offender treatment, he informed the treatment provider that he had been found not guilty of the sex offenses and that the records of those offenses had been expunged. In November 2008, a few months into the program, Appellant's treatment provider told Appellant that he could not continue counseling until he either admitted to the sex offenses or passed a polygraph test.[4] Appellant was told to leave the counseling session, but he returned a couple of weeks later after "probation was able to work it out with Mr. Strain." In February 2009, Appellant filed a motion to modify the conditions of probation, alleging that the sex-offender-treatment condition of his community supervision required him to

> participate in and successfully complete a sexual offender treatment program that, it part, requires him to:
>
> > (1) admit his guilt for the sex offenses for which he was found "Not Guilty"

by Judge Wilson, or face revocation of his deferred adjudication probation for the offense of Injury to a Child; and

> (2) as an additional prerequisite to successful completion of the required sex offender treatment program, pass a lie detector concerning his involvement in the sex offenses for which he was found "Not Guilty" and for which the Expungement Order was entered.

In addition, [Appellant] has been required to participate in group sex offender counseling sessions in which the therapy provider has, in the presence of other probationers in the treatment program, accused him of dishonest[ ]y and subjected him to ridicule when he has stated that the sex offenses in question were resolved in his favor, that "Not Guilty" verdicts had been entered, and that those arrests and charges had been expunged.

Although the record does not show that Appellant presented the motion to the trial court or that a hearing was held on the motion, Appellant testified that his attorney and the trial judge had a "conference" in March 2009.[5] In August 2009, after Appellant's first year of treatment, there was a conference between Appellant's counsel, the State's attorney, the trial court, the community-supervision officer, and Strain. The trial court decided at the conference that Appellant would not be required to admit to the sex offenses.[6]

---

ditions to register as sex offender, to pay for counseling, to refrain from working as chiropractor, to participate in sex offender counseling and take polygraph, and to refrain from contact with minor girls were forfeited by not objecting when conditions imposed).

4. Appellant began treatment with "Mr. Medina" but was later transferred to Michael Strain's program. The record conflicts as to whether Medina or Strain was his treatment provider at this time.

5. The record does not reflect what was discussed at this conference. The State noted in a post-submission brief to this court that Appellant's February 2009 "written objections to the sex offender treatment" resulted in the *ex parte* hearing with the judge in March and the August hearing conducted in chambers.

6. Appellant and his community-supervision officer both testified that the trial court waived the treatment goal that he admit to the offenses; and Strain testified that the trial

After that August conference, Strain told Appellant what to say during group counseling sessions: "Just state that you're here under deferred adjudication, injury to a child, and you deny the offense, sexual acts, and the reason that you're here is because the Court wants you here." Appellant did so and continued treatment without incident for almost five months until February 1, 2010, when the issue of Appellant discussing and admitting to the sex offenses arose again. During a session with a victim therapist, the therapist asked Appellant about "the original sexual allegations," and Appellant refused to discuss them "per court order." Appellant set up a meeting with Strain two days later to discuss how to proceed and brought with him to the meeting "legal documents" showing the expunction and acquittal of the sex offenses. After reading the documents, which included a handwritten note by Appellant's attorney that it would be illegal for Strain to discuss the sex offenses that were the subject of an expunction order, Strain told Appellant that he could not continue counseling and that he needed "to work it out with the Court."

Appellant called his community-supervision officer the following day and relayed to her that "Strain ha[d] discontinued his treatment for now." Appellant also talked to his attorneys about asking the trial court for clarification on what could be discussed during treatment. Appellant's attorneys met with the trial court less than one week after Appellant's meeting with Strain, and the trial court said it wanted to hear from the community-supervision department on the issue. Strain also sent Appellant's community-supervision officer a letter explaining the confusion as to whether the trial court's previous ruling prohibited any discussions about "the original sexual charges" against Appellant and concluding, "If it is illegal to even discuss that the charges against [Appellant] were originally sexual in nature, I am not sure any useful treatment work can be done." Appellant's community-supervision officer showed Strain's letter to a court officer, who in turn took the letter to the trial court and "briefed the Judge regarding the issue." According to the community-supervision officer, "it was determined that [Appellant] would still be required to attend sex offender treatment."[7]

A review of the record makes clear that once Appellant learned that sex-offender treatment would require him to discuss and admit to the sex offenses of which he had been found not guilty and that were the subject of an expunction order, he objected to his treatment provider, he filed a motion to modify the terms of treatment on that basis, the issue was raised and discussed during multiple conferences with the trial court, the trial court attempted to clarify what could be discussed during a conference, and after Appellant and Strain disagreed on what the trial court had con-

court decided that the treatment providers "could discuss the sexual offense[s]" but that Appellant's not admitting to the offenses could not be held against him.

7.  Appellant testified that he was not informed of the trial court's ruling and thought that "they" were "in a holding pattern" until they heard back from the trial court. He testified that during every meeting he had with his community-supervision officer after his February meeting with Strain until the State filed its petition to proceed to adjudication in Octo-ber, his community-supervision officer said that they were waiting to hear from the trial court on that issue.

Appellant's community-supervision officer testified that she made clear to Appellant that "he would still be held accountable for attending" sex offender treatment. Although the community-supervision officer offered other treatment providers, Appellant declined, stating, "Until we get information on the offense, we're going to have the same issue."

cluded could be discussed during treatment, both Appellant's attorneys and the probation department talked to the trial court about the issue again. *See* Tex. R.App. P. 33.1(a)(1) (requiring, as a prerequisite to appellate review, that "the complaint was made to the trial court by a timely request, objection, or motion"). The trial court and all parties involved were well aware of the issue, having had several prior conferences on it. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex.Crim. App.2012) ("The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it and to allow opposing counsel to remedy the error."). After being briefed on the issue, the trial court ruled, in effect, that Appellant would still be required to attend sex offender treatment. *See* Tex.R.App. P. 33.1(a)(2)(A) (requiring, for preservation purposes, that the trial court "ruled on the request, objection, or motion, either expressly or implicitly"). I would hold that Appellant complied with the preservation requisites of rule 33.1(a) by continuously objecting to the requirement that he admit and discuss sex offenses that he was found not guilty of committing and that had been expunged as soon as he learned of this requirement; the trial court and the State were aware of Appellant's complaint and had even addressed and attempted to resolve it multiple times, and the trial court ultimately ruled on the issue. *Accord Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App.1992) ("The standards of procedural default . . . are not to be implemented by splitting hairs in the appellate courts.").

Consequently, for the above reasons, I would hold that Appellant preserved for this court's review his complaint that the trial court abused its discretion by revoking his community supervision for failure to attend and complete a sex-offender treatment program that required him to discuss and admit to sex offenses of which he had been found not guilty and that had been expunged, and I would reach the merits of this argument. Because the majority does not, I respectfully dissent.

GARDNER, J. joins.